# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

_____
)
**KEITH BENSON; NEWCOM HOLDINGS** )
**PTY. LTD.; and BENCOM GROUP** )
**PTY. LTD.,** )
)
          Plaintiffs, )
)
**v.** )       Civil Action No.  1:12cv1161
)       (CMH/TCB)
**NFC DATA INC. (DELAWARE);** )
**NFC DATA INC. (BVI); GEOFFREY** )
**CAIRNS; KENNETH MAGES; ALAN** )
**MORGAN; JOHN BETTINGER; VSIM** )
**PATENT CO LLC; IPVCO LLC; and** )
**JOHN DOES 1 – 5,** )
)
          Defendants. )
_____)


### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) A TEMPORARY RESTRAINING ORDER; (2) ORDER COMPELLING DEFENDANTS TO PROVIDE LIMITED EXPEDITED DISCOVERY; AND (3) A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    STATEMENT OF FACTS .............................................................................. 2

III.   ARGUMENT ................................................................................................... 5

    A.  Legal Standard for Granting a Temporary Restraining Order and a
        Preliminary Injunction ........................................................................... 5

    B.  Plaintiffs Are Likely to Succeed on the Merits .................................... 6

        1.  Wrongful Conversion of Benson's Inventions and Technologies ............... 6

        2.  Fraudulent Conveyances Under Virginia Code 55-80 ................................ 8

        3.  RICO and Virginia Business Conspiracy Statute Violations ....................... 8

        4.  Breach of Fiduciary Duties ......................................................................... 9

    C.  Plaintiffs Will Suffer Irreparable Harm Absent a TRO and Preliminary
        Injunction ................................................................................................ 9

    D.  The Balance of Hardships Weighs in Favor of Granting a TRO and Preliminary
        Injunction .............................................................................................. 12

    E.  Granting the TRO and Preliminary Injunction Are In the Public Interest .......... 13

    F.  The Defendants Should Be Compelled To Produce Limited Expedited
        Document Discovery.............................................................................. 14

IV. CONCLUSION AND RELIEF REQUESTED ....................................................... 16

## TABLE OF AUTHORITIES

**<u>Federal Cases</u>**

*Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992) .......................................................... 10

*Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems, Inc.*,
    113 S. Ct. 2188, 2195 (2011) ...................................................................................................... 7

*Ciena Corp. v. Jarrard*, 203 F.3d 312 (4th Cir. 2000) ................................................................. 14

*D'Addario v. Geller*, 264 F.Supp.2d 367 (E.D.Va. 2003) ............................................................ 8

*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940) ...................................................... 10

*Fimab-Finanziaria Maglificio Biellese Fratelli Fila, S.p.A. v. Helio Import/Export, Inc.*,
    601 F.Supp. 1 (S.D. Fla. 1983) ................................................................................................ 15

*FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir.1982) ............................................................. 12

*Harris Corp. v. National Iranian Radio & Television*, 691 F.2d 1344 (11th Cir. 1982) ............. 12

*Hughes Network System v. Interdigital Communications Corp.*, 17 F.3d 691 (4th Cir. 1994) .... 12

*International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d. Cir.), ................................................ 11

*Itek Corp. v. First National Bank*, 730 F.2d 19 (1st Cir.1984) ................................................... 12

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011) ......................................................................... 12

*MeccaTech, Inc. v. Kiser*, 2008 WL 934366 (D. Neb. 2008) ...................................................... 14

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546 ....... 10

*Physicians Interactive v. Lathian Systems, Inc.*, No. CA-1193-A,
    2003 WL 23018270 (E.D. Va. Dec.5, 2003) .......................................................................... 15

*Productos Carnic, S.A. v. Central American Beef & Seafood Trading Co.*,
    621 F.2d 683 (5th Cir.1980) ................................................................................................... 11

*Quince Orchard Valley Citizens Asociation, Inc. v. Model*, 872 F.2d 75 (4th Cir. 1989) ............. 6

*Rockwell International Systems, Inc. v. Citibank, N.A.*, 719 F.2d 583 (2d. Cir. 1983)................. 12

*Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187 (4th Cir.2003) .................................................... 15

*Rubbermaid Commercial Prods. v. Contico International*, 836 F. Supp. 1247 (W.D. Va. 1993) 13

*ST Ventures, LLC v. KBA Assets and Acquisitions LLC*, NO. 1:12-CV-01058 LJO,
2012 WL 3647656 (E.D. Cal. Aug. 23, 2012) ........................................................................ 13

*The Real Truth About Obama, Inc. v. Federal Election Comission*, 575 F.3d 342 (4th Cir.) ........ 6

*United States Department of Labor v. Wolf Run Mining Co.*, 452 F.3d 275 n.1 (4th Cir. 2006) ... 6

*United States ex rel. Rahman v. Oncology Associates, P.C.*, 198 F.3d 489 (4th Cir.1999).......... 11

*United States ex rel. Taxpayers Against Fraud v. Singer Co.*,
889 F.2d 1327 (4th Cir.1989) ........................................................................................... 10, 11

*United States v. First National City Bank*, 379 U.S. 378, 85 S.Ct. 528,
13 L.Ed.2d 1365 (1965) ......................................................................................................... 10

*In re Uranium Antitrust Litigation*, 617 F.2d 1248, (7th Cir. 1980)............................................. 13

*Walczak v. EPL Prolong, Inc.*, 198 F.3d 725 (9th Cir. 1999) ................................................... 9, 11

*Winter v. Natural Resources Defense Council*, 129 S.Ct. 365 (2008) ................................ 6, 12, 13

## State Cases

*Advanced Marine Enterprises, Inc. v. PRC Inc.*, 256 Va. 106 (1998) ............................................ 9

*Credit Corp. v. Kaplan*, 198 Va. 67 (1956) .................................................................................. 7

## Federal Statutes

18 U.S.C. §1961 ............................................................................................................................. 8

## State Statutes

Va. Code Ann. §§ 18.2-499 and 500................................................................................... 8, 9

Va. Code Ann. §§ 55-80 ................................................................................................................ 8

## Federal Rules

Fed. R. Civ. P. 26(d) ................................................................................................................... 14

Fed. R. Civ. P. 34(b)(2)(A) ......................................................................................................... 14

## I.       INTRODUCTION

Plaintiffs Keith Benson ("Benson"), Newcom Holdings Pty. Ltd. ("Newcom") and

Bencom Group Pty. Ltd. ("Bencom") ("Plaintiffs"), by and through their undersigned attorneys,

submit this Memorandum of Law in Support of their Motion seeking:  (1) a Temporary

Restraining Order prohibiting defendants, NFC Data Inc. (Delaware); NFC Data Inc. (BVI);

Geoffrey Cairns; Kenneth Mages; Alan Morgan; John Bettinger; VSIM Patent Co LLC; and

ipVco LLC (hereinafter, collectively, the "NFC Defendants") from entering into or

consummating any transaction by which the equity, technology or intellectual property assets of

NFC Data Inc. would be acquired by Play LA Inc. or any other entity or person located outside

the United States or otherwise beyond the jurisdiction of this Court; (2) an Order Compelling

Defendants to Provide Limited Expedited Discovery, requiring production of four specific

categories of documents directly relevant to this Motion; and (3) a preliminary injunction issued

pursuant to Rule 65 of the Federal Rules of Civil Procedure maintaining the status quo pending a

trial in this action.

## II.      STATEMENT OF FACTS

The facts supporting the Plaintiffs' Motion are set forth in the Verified Supplemental

Complaint and the Declaration of Keith Benson filed herewith, and can be summarized as

follows:  Plaintiff Keith Benson, a prolific inventor and entrepreneur, conceived of and founded

NFC Data Inc. in 2010.  Mr. Benson invented a technology for securely transmitting stored

information from a mobile device to another device or network, through a contactless technology

such as Near Field Communications (NFC), and by encrypting and decrypting personal

identification numbers of potential users of the device for security and authentication purposes.

Benson named this technology the "SQWIZZ," using an Australian colloquial term meaning "take another look." In October 2010, Mr. Benson formed a Delaware corporation, NFC Data Inc. along with two of the defendants, Kenneth Mages and Alan Morgan, to commercialize the SQWIZZ technology. The equity of NFC Data Inc. was originally divided evenly between the three participants, Benson, Mages and Morgan. Each of the three shareholders was appointed as a Director of NFC Data Inc. Mr. Benson went on to develop and file patent applications on the SQWIZZ and other related technologies for the benefit of NFC Data Inc. In addition, Benson facilitated NFC Data Inc.'s acquisition of his granted U.S. patent 6,747,547, later reissued as RE43848 (the "Benson Patent"), which was to be used for the benefit of both the company and of Benson in his individual capacity as the inventor.

By May 2011 it was agreed that defendant Morgan would have no further control or management role with the company. The equity holdings were revised to: 40% Benson; 10% Bencom; 25% Mages; and 25% Morgan. The remaining Directors were Benson and Mages. Benson continued to work on further technology inventions, later named the "Padloc."

As set forth in the orginal Complaint, however, in mid-2011, defendants Mages, Morgan and Cairns fraudulently usurped Benson's equity ownership and management control over NFC Data Inc. and wrongfully misappropriated Benson's inventions and technologies. Since that time, defendants Mages, Morgan, and Cairns have taken numerous fraudulent and otherwise wrongful actions in derogation of Benson's ownership and inventorship rights. In response to this fraudulent and wrongful conduct, the original Complaint seeks damages as well as injunctive and declaratory relief to restore Mr. Benson's inventions and his ownership and management control of NFC Data Inc.

2

On December 12, 2013, after the original Complaint had been filed, Plaintiffs learned of a press release issued by a company located in Barbados called Play LA Inc., which announced that Play LA Inc. was acquiring NFC Data Inc.  Play LA Inc. is a foreign issuer that is publicly owned and is registered with the U.S. Securities and Exchange Commission (SEC). Accordingly, on December 12, 2012, Play LA Inc. filed with the SEC a Form 6-K (Report of Foreign Private Issuer) describing the proposed acquisition of NFC Data Inc. and attaching a copy of the Purchase Agreement for the transaction.  *See* Declaration of Keith Benson ("Benson Decl."), Exhibit 3.

The Form 6-K filing by Play LA Inc. reveals several additional actions in the fraudulent scheme undertaken by the NFC Defendants subsequent to the filing of the Complaint:

First, while the assets and business described in the agreement clearly refer to the NFC Data Inc. entity founded by Benson and the technology assets that he invented, the Form 6-K identified the target company, "NFC Data Inc." as a "BVI business company incorporated under the laws of the British Virgin Islands."  Thus it appeared that the NFC Defendants had created a new alter ego entity in an attempt to remove the corporate assets of NFC Data Inc. – including the SQWIZZ technology, the Padloc technology, and the Benson Patent – to a location outside the jurisdiction of the United States courts.

Second, while the Purchase Agreement attached to the 6-K includes customary representations and warranties by the seller, NFC Data Inc., that there are no pending or threatened claims or proceedings relating to the company and its assets, the Purchase Agreement does not disclose anything about the Complaint filed in this Court on October 17, 2012 asserting Benson's ownership of the underlying corporate and intellectual property assets.

3

Third, the Purchase Agreement section entitled "Licenses" does not make any disclosure regarding the historical licensing agreements governing the NFC Data patents, notwithstanding that the principals of NFC Data had actually filed their own litigation in January 2012 which unsuccessfully sought to nullify such licenses.

The Form 6-K dated December 12, 2012, announced that the closing date for the acquisition of NFC Data would be in "early 2013."  Thus the closing of the transaction is imminent and urgent consideration of this Motion is warranted.

On January 4, 2013, Plaintiffs obtained documentary evidence of a merger transaction that had been undertaken by the NFC Defendants on October 24, 2012 – one week after the filing of the original Complaint.  *See* Benson Decl., Exhibit 4.  The merger agreement was reported by defendant Morgan to the Delaware Corporations Division. The document filed by Morgan stated that the Delaware corporation founded by Mr. Benson, NFC Data Inc., was merging with another company identically named "NFC Data Inc."  However, the surviving "NFC Data Inc." would be located in an offshore jurisdiction, the British Virgin Islands.

The October 24 merger transaction between "NFC Data Inc." and "NFC Data Inc. (BVI)" constitutes a fraudulent conveyance in violation of Virginia Code 55-80.  Its clear purpose is to defeat Mr. Benson's rights and claims in this action by attempting to transfer the equity and technology assets of NFC Data Inc. to an offshore location.

In entering into the October 24 merger transaction, however, NFC Data Inc. (BVI) expressly consented to jurisdiction through its Delaware registered agent with respect to "any proceeding for enforcement of any obligation of the surviving corporation arising form [sic] this merger . . . ."  NFC Data Inc. (BVI) further "irrevocably appoint[ed] the Secretary of State of Delaware as its agent to accept service of process in any such suit or proceeding."  As a matter of

4

law, the new NFC Data Inc. (BVI) is the mere continuation of the old NFC Data Inc.  Therefore

the new NFC Data Inc. is subject to the jurisdiction and remedies of this Court to the same extent

as the old NFC Data Inc.

These transactions are a transparent attempt by defendants, in response to the Complaint,

to evade the jurisdiction of the U.S. courts and thereby frustrate Mr. Benson's claims and rights

to the underlying assets of the company and the technology he created. The fraud resulting from

this conduct is made all the worse because it would impact the public shareholders of Play LA

Inc., who would be trading in shares of a company where its principal assets were wrongfully

obtained and where the related representations and warranties, set forth in filings made with the

SEC, were materially false and misleading.

## III.   ARGUMENT

### A.   Legal Standard for Granting a Temporary Restraining Order and a Preliminary Injunction

Rule 65 of the Federal Rules of Civil Procedure provides for the issuance of temporary

restraining orders and preliminary injunctions as a means of maintaining the status quo,

preventing harm to one or more of the parties before the court can fully adjudicate the claims in

dispute.  The issuance of a TRO and preliminary injunction are "committed to the sound

discretion of the trial court."  *Quince Orchard Valley Citizens Ass'n, Inc. v. Model*, 872 F.2d 75,

78 (4th Cir. 1989).  The standard for granting a TRO is the same as the standard for entering a

preliminary injunction.  *See, e.g., U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275,

281 n.1 (4th Cir. 2006). The plaintiff "must establish that he is likely to succeed on the merits,

that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural*

*Resources Defense Council*, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345-47 (4th Cir.).

In this case, as set forth below, each of the factors weighs heavily in favor of a TRO and a preliminary injunction against the NFC Defendants prohibiting them from consummating the Share Purchase Agreement with Play LA Inc. or otherwise transferring any of the equity or assets of NFC Data Inc. to any entity or person outside the United States or beyond the jurisdiction of this Court.

**B.    Plaintiffs Are Likely to Succeed on the Merits**

The merits of the case are established by facts set forth in the Verified Supplemental Complaint and the Declaration of Keith Benson, as well as the documents attached to the Declaration. Plaintiffs have provided detailed evidence establishing a clear likelihood that they will prevail on each claim.

1.    *Wrongful Conversion of Benson's Inventions and Technologies*

The intention and result of the NFC Defendants' schemes will be to take the inventions, technology and business that Benson created and to sell them to third parties for the NFC Defendants' gain. This would be a wrongful conversion of assets that belong to Benson directly, as inventor, and indirectly, through his ownership stake in NFC Data Inc., which would be eliminated through the transactions.

"Conversion is any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of their possession." *Credit Corp. v. Kaplan*, 198 Va. 67 (1956). Here, Defendants have converted Benson's technology and inventions, as well as his equity interest in NFC Data Inc. It is undisputed that plaintiff Benson founded NFC Data, that he invented the technology and intellectual property NFC Data is commercializing,

6

and that the Defendants have undertaken transactions which, if not stopped, would fraudulently deprive Benson of his equity and intellectual property interests.

Mr. Benson has fundamental rights to his inventions, in addition to the further rights accrued through filing for patent protection. The U.S. Supreme Court recently discussed this bedrock principle in *Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems, Inc.*, 113 S. Ct. 2188, 2195 (2011), noting:

> Our precedents confirm the general rule that rights in an invention belong to the inventor. *See, e.g., Gayler v. Wilder*, 51 U.S.(10 How. 477), 493, 13 L.Ed. 504 (1851) ("the discoverer of a new and useful improvement is vested by law with an inchoate right to its exclusive use, which he may perfect and make absolute by proceeding in the manner which the law requires"); *Solomons v. United States*, 137 U.S. 342, 346, 26 Ct.Cl. 620, 11 S.Ct. 88, 34 L.Ed. 667 (1890) ("whatever invention [an inventor] may thus conceive and perfect is his individual property"); *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 188, 53 S.Ct. 554, 77 L.Ed. 1114 (1933) (an inventor owns "the product of [his] original thought"). The treatises are to the same effect. *See, e.g.,* 8 *Chisum on Patents* § 22.01, p. 22–2 (2011) ("The presumptive owner of the property right in a patentable invention is the single human inventor").

Because Benson never assigned his inventions, neither NFC Data Inc. nor the listed joint inventors have any legitimate right to convert those inventions or transfer them to third parties. *See Kremen v. Cohen,* 337 F.2d 1024 (9th Cir. 2003) (intellectual property assets are within the definition of property subject to the common law theory of conversion).

2.    *Fraudulent Conveyances Under Virginia Code § 55-80*

The merger agreement with NFC Data Inc. (BVI) and the subsequent Share Purchase Agreement with Play LA Inc. have no legitimate business purpose, but rather are a transparent attempt to transfer the underlying assets to an offshore location beyond the jurisdiction of the Court, so as to defeat Benson's and Bencom's claims. Virginia Code § 55-80 provides: "Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal . . . with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are

7

or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void."  Given the evidence, Plaintiffs are very likely to prevail on their arguments that the merger with NFC Data Inc. (BVI) and the proposed Play LA Inc. acquisition are fraudulent conveyances and therefore void under Virginia Code § 55-80.

3.    <em>RICO and Virginia Business Conspiracy Statute Violations</em>

The actions alleged in the original Complaint and the Supplemental Complaint also are likely to be determined to be actionable under RICO, 18 U.S.C. §1961. et seq.  To make out a prima facie RICO claim, a plaintiff must allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, and (5) a resulting injur[y] in his business or property (6) by reason of the RICO violation.  *See D'Addario v. Geller*, 264 F.Supp.2d 367, 388 (E.D.Va. 2003).  Here, the orginal Complaint, the Verified Supplemental Complaint and the Benson Declaration clearly demonstrate that Defendants engaged in racketeering activity (mail and wire fraud) and through a pattern of this illegal conduct over a period of years that has defrauded Bencom and Benson.

Similarly, the verified facts set forth in the Supplement Complaint and the supporting Declaration demonstrate that the NFC Defendants have conspired with at least one other person to breach fiduciary and other common law obligations, to steal tangible and intellectual property and trade secrets, to conceal their theft of tangible and intellectual property and trade secrets, to use tangible and intellectual property and stolen trade secrets in unfair competition with the Plaintiffs, and to tortiously interfere with Benson's and Bencom's prospective economic advantage, in clear violation of the Virginia Business Conspiracy Statute, Va. Code Ann. §§ 18.2-499 and -500.  *See Advanced Marine Enterprises, Inc. v. PRC Inc.*, 256 Va. 106, 117 (1998) (affirming violations of the Virginia Business Conspiracy Statute based on business wrongs including breaches of fiduciary duties, without regard to intent).

8

4.      *Breach of Fiduciary Duties*

Finally, the individual defendants, Mages, Morgan and Cairns, unquestionably breached their fiduciary duties to Benson as a co-Director and major shareholder.  Each of these defendants have a direct stake in the transactions that are challenged.  The burden therefore shifts to them to prove that the transactions are inherently fair – a standard which could not reasonably be expected to be met under the circumstances.  *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725 (9th Cir. 1999) (evidence demonstrated breaches of fiduciary duties and fraudulent conveyances where interested Directors engaged in a pattern of improperly dispersing of and transferring assets; preliminary injunction issued and upheld on appeal).

**C.      Plaintiffs Will Suffer Irreparable Harm Absent a TRO and Preliminary Injunction.**

Plaintiffs will suffer immediate and irreversible harm if a TRO and preliminary injunction are not ordered.  The essential relief requested in this case is to restore to Mr. Benson that which he created and which he properly owns:  NFC Data Inc., including its business assets, intellectual property, brand, confidential information, and business opportunities.  Benson and Bencom between them own 50% of the equity of that business.  Benson is one of the two Directors, and therefore entitled to jointly control the company.

Absent injunctive relief, the NFC Defendants will sell all of the equity of NFC Data Inc. to a publicly owned, foreign private company.  Were that to occur, it would be impossible to return Benson to the position to which he rightfully belongs.  His controlling role and the underlying inventions, trade secrets, designs, brand and business opportunities he created and contributed would be irretrievably lost.

There can be no adequate remedy at law for these losses.  The value of the business as a whole and the underlying technology and intellectual property created by Mr. Benson are not

calculable or compensable. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546. 551-52 (4th Cir. 1994) (loss of goodwill constituted irreparable harm, warranting preliminary injunction). The fact that the NFC Defendants would take Benson's proprietary inventions, trade secrets and confidential business strategies strongly supports an injunction. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (showing of irreparable harm was sufficient to enjoin defendants from utilizing confidential information to compete with plaintiff business entity).

Moreover, these transactions would remove the Benson Patent from NFC Data Inc. – where Benson has a major interest and controlling position – to an offshore company that has been set up without his involvement. As a result, he would have no ability to control the licensing, enforcement, or further development of his own inventions as claimed in his own patent. This injury clearly would not be compensable at law, but can only be redressed through injunctive relief preventing the irrevocable loss of these unique corporate assets.

The U.S. Supreme Court long ago established that an injunction is reasonable to preserve the status quo pending determination of a lawsuit when the defendant's assets are in danger of dissipation or depletion. *See Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940). Federal Courts are empowered to restrain the removal of assets from the United States through injunctive relief. *See United States v. First National City Bank*, 379 U.S. 378, 85 S.Ct. 528, 13 L.Ed.2d 1365 (1965).

In *United States ex rel. Taxpayers Against Fraud v. Singer Co.*, 889 F.2d 1327 (4th Cir.1989), the Fourth Circuit affirmed a preliminary injunction which required the defendant "to obtain court review and approval of non-ordinary-course-of-business transactions to prevent [the defendant], without court awareness, from further liquidating or distributing its assets." *Id.* at

1328. The court noted that such an injunction could be appropriate where the principal defendant was insolvent and its assets were "in danger of dissolution and depletion."

In another similar case, the Court of Appeals for the Ninth Circuit upheld a preliminary injunction entered by the District Court enjoining defendants from consummating the exchange of a planned "two for one" stock swap and subsequent liquidation of the target, holding that the injunction "appropriately preserved the status quo and prevented the irreparable loss of rights before judgment." *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725 (9th Cir. 1999); *see also MeccaTech, Inc. v. Kiser*, 2008 WL 934366 (D. Neb. 2008) ("MeccaTech has provided ample evidence that SGS, and its alter ego ESP, and their agents and employees have systematically attempted to delay this litigation and hide assets. Consequently, without this injunction, MeccaTech's legal remedy will be inadequate.").

As the Court of Appeals for the Fourth Circuit stated in *United States ex rel. Rahman v. Oncology Associates, P.C.*, 198 F.3d 489, 496-97 (4th Cir.1999):

> [W]hen the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested. This nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets.

Federal courts have routinely found preliminary injunctions appropriate where, as here, it has been shown that the defendant "intended to frustrate any judgment on the merits" by "transfer[ring its assets] out of the jurisdiction." *Productos Carnic, S.A. v. Central American Beef & Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir.1980); *see also International Controls Corp. v. Vesco*, 490 F.2d 1334, 1347 (2d. Cir.), *cert. denied*, 417 U.S. 932 (1974); *Itek Corp. v. First National Bank*, 730 F.2d 19, 22–23 (1st Cir.1984); *accord Rockwell International Systems,*

11

*Inc. v. Citibank, N.A.*, 719 F.2d 583, 586–88 (2d. Cir. 1983); *Harris Corp. v. National Iranian Radio & Television*, 691 F.2d 1344, 1356–57 (11th Cir. 1982).

More generally, a district court has the power to issue a preliminary injunction to preserve the status quo and ensure the possibility of affording a party equitable relief. *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir.1982). Here, it is clear that Bencom and Benson would likely be left without effective equitable relief in the absence of a preliminary injunction and as a result would be irreparably harmed. *See, e.g., Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (finding likelihood of irreparable harm where the defendants threatened to dissipate or transfer assets out of the jurisdiction, thereby impairing the court's ability to grant effective equitable relief).

D.     **The Balance of Hardships Weighs in Favor of Granting a TRO and Preliminary Injunction**

The third factor is whether the balance of equities tips in favor of granting the injunction. *Winter*, 129 S.Ct. at 374. The court must weigh the harm to the movant if the injunction does not issue, against the harm to the non-movant if it does. *See Hughes Network Sys. v. Interdigital Communications Corp.*, 17 F.3d 691, 693-694 (4th Cir. 1994) (balance of hardships is a vital component in assessing whether to grant preliminary injunctive relief).

In this case, the potential harm to the Plaintiffs is extreme. Benson faces the complete loss of control and ownership of the company he founded and the underlying technologies he invented and commercialized through that company, as well as loss of control over the granted Benson Patent which was acquired by NFC Data Inc.

By contrast, the NFC Defendants would simply be left with the status quo ante. In the very unlikely event they were to prevail, they would be able to pick up with their transaction at that point. Plaintiffs have clearly demonstrated that the balance of the hardships favors a TRO

12

and preliminary injunction.  *See Rubbermaid Commercial Prods. v. Contico Int'l*, 836 F. Supp.

1247, 1256 (W.D. Va. 1993) (balance of harm favored movant in action seeking to enjoin use of

design patent by competitor).

      **E.**     **Granting the TRO and Preliminary Injunction Are In the Public Interest**

     "In exercising their sound discretion, courts of equity should pay particular regard for the

public consequences in employing the extraordinary remedy of injunction."  *Winter*, 129 S. Ct.

365 (2008) (*quoting Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  Here, the NFC

Defendants' conduct appears to be knowingly contributing to violations of the U.S. securities

laws.  Section 10b-5 of the 1934 Securities Act prohibits false or materially misleading

statements or omissions in documents disclosed to investors such as the Play LA Inc. Form 6-K.

The probable violation of the securities laws strongly supports an injunction.  "When a violation

of law is present, Courts have considerable discretion in fashioning equitable orders to prevent

the removal of assets from the United States."  *In re Uranium Antitrust Litigation*, 617 F.2d

1248, (7th Cir. 1980) (*citing SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2nd Cir. 1972)).

"[A]lthough the dispute in this case relates to a purely private transaction, the public interest is

promoted, at least in a general way, when alleged fraud or conversion is thwarted."  *ST Ventures,*

*LLC v. KBA Assets and Acquisitions LLC*, No. 1:12-cv-01058L10, 2012 WL 3647656 (E.D. Cal.

Aug. 23, 2012) (granting preliminary injunction where plaintiff alleged that unless preliminary

injunctive relief was granted a bond would be sold to a purported bona fide purchaser,

transferred outside the jurisdiction of the Court, and the plaintiff would left without the prospect

of equitable relief).

**F.      The Defendants Should be Compelled to Produce Limited Expedited Document Discovery**

This is a case where, as a result of their wrongful conduct, the NFC Defendants have gained control of the key documentary evidence bearing on the merits of these issues.  Plaintiffs Benson and Bencom should have been provided with the relevant documentation throughout, but the NFC Defendants, in violation of their fiduciary duties and as part of their fraudulent business conspiracy, have cut Benson off from access to the relevant corporate records, including the formation documents; presentations to investors and potential acquirers; and intellectual property applications and other documentation.  The Court should compel the NFC Defendants to immediately produce these four limited categories of documents (subject to protection under confidentiality undertakings and submitted under seal if necessary) so that the parties and the Court have full access to the core evidence relating to these claims, in advance of the hearing to be held on the request for a preliminary injunction.

It is well established that the Federal Rules of Civil Procedure allow courts to order expedited discovery in the form of document requests prior to an injunction hearing.  *See* Fed. R. Civ. P. 26(d) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order."); Fed. R. Civ. P. 34(b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served. A shorter or longer time may be . . . ordered by the Court.")

Limited expedited discovery is particularly appropriate where a preliminary injunction is sought.  *See e.g., Ciena Corp. v. Jarrard*, 203 F.3d 312, 324 (4th Cir. 2000) (remanding with instructions to the lower court to provide the defendant with an opportunity to conduct expedited discovery in connection with preliminary injunction).  The Court has "wide latitude in controlling discovery and . . . its rulings will not be overturned absent a showing of clear abuse

14

of discretion." *Rowland v. Am. Gen. Fin., Inc.,* 340 F.3d 187, 195 (4th Cir. 2003). The discovery rules contained in the Federal Rules of Civil Procedure provide tools for a court to adjust the discovery time outlined by Rule 26, and "if warranted, to expedite the time for responding to the discovery sought." *Physicians Interactive,*2003 WL 23018270 at *4.  Courts have found that immediate discovery "should be granted when some unusual circumstances or conditions exist that would likely prejudice the party if he were required to wait the normal time." *Fimab–Finanziaria Maglificio Biellese Fratelli Fila, S.p.A. v. Helio Import/Export, Inc.*, 601 F.Supp. 1, 3 (S.D. Fla. 1983) (citing *Gibson v. Bagas Restaurants*, 87 F.R.D. 60, 62 (W.D.Mo.1980)).

Motions for expedited discovery are routinely granted where, as here, evidence is necessary to a court's consideration of motions for a preliminary injunction or temporary restraining order.  *See, e.g., Physicians Interactive v. Lathian Sys., Inc.*, 2003 WL 23018270, at *4 (E.D.Va. Dec.5, 2003) (granting limited discovery to support preliminary injunction motion).

The limited discovery requested by Plaintiffs in this Motion goes directly to the core issues relevant to the request for a preliminary injunction:  the corporate structure and control of NFC Data Inc.; the ownership and inventorship of the technologies created by Benson and usurped by the NFC Defendants; the NFC Defendants' own descriptions of the business to third parties; and the transaction documents relating to the proposed acquisition and merger.  These requests are specifically tailored to the circumstances.  The documents will be critically important to a fair resolution of the motion for a preliminary injunction, and their immediate production should be compelled.

## IV.   CONCLUSION AND RELIEF REQUESTED

For the reasons stated herein, Plaintiffs respectfully request that the Court grant (1) a Temporary Restraining Order prohibiting the NFC Defendants from entering into or

15

consummating any transaction by which any of the equity, technology or intellectual property

assets of the former NFC Data Inc. or its successors, subsidiaries or affiliates, would be acquired

by Play LA Inc. or any other entity or person located outside the United States or otherwise

beyond the jurisdiction of this Court; (2) an Order Compelling Limited Expedited Discovery of

the Defendants, requiring production of four specified categories of documents directly relevant

to this Motion; and (3) an Order for a Preliminary Injunction pursuant to Rule 65 of the Federal

Rules of Civil Procedure to maintain the status quo ante pending a trial in this action.

Respectfully Submitted,


By:____/s/_____
    Caitlin Lhommedieu, Esq.
    Virginia Bar # 47796
    Gregory Haight, Esq.
    Virginia Bar # 6601
    ROEDER, COCHRAN & HAIGHT
    8280 Greensboro Dr., Suite 601
    McLean, VA 22102
    Tel: (888)336-9602
    Fax: (703) 749-6027
    Email: greghaight@rchlaw.net
    *Attorneys for Plaintiffs Keith Benson, Newcom*
    *Holdings Pty. Ltd., and Bencom Group Pty. Ltd.*

James R. Wrathall, Esq.
SULLIVAN & WORCESTER, LLP
1666 K Street NW, Suite 700
Washington, DC 20006
Tel: (202) 775-1206
Fax: (202) 293-2275
Email: jwrathall@sandw.com
(motion for leave to appear *pro hac vice*
pending)
*Of Counsel*

Dated:   January 11, 2013